FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 23, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VANESSA P.,[1]<br>                    Plaintiff,<br><br>        vs.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>                    Defendant. | No. 2:19-cv-00253-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On September 22, 2016, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of July 31, 2015. Tr. 94, 104, 114, 124, 203-13. The applications were denied initially and on reconsideration. Tr. 125-28, 130-35. Plaintiff appeared before an administrative law judge (ALJ) on December 13, 2017, and the hearing was continued to allow Plaintiff to seek representation. Tr.

40-49.  On May 7, 2018, Plaintiff appeared before an ALJ with her counsel.  Tr.
50-84.  On July 26, 2018, the ALJ denied Plaintiff's claim.  Tr. 12-33.

At step one of the sequential evaluation process, the ALJ found that Plaintiff
had not engaged in substantial gainful activity since July 31, 2015. Tr. 17.  At step
two, the ALJ found that Plaintiff had the following severe impairments: anxiety
disorder, depression, and adjustment disorder.  Tr. 17.

At step three, the ALJ found that Plaintiff did not have an impairment or
combination of impairments that met or medically equaled the severity of a listed
impairment.  Tr. 21.  The ALJ then concluded that Plaintiff had the RFC to
perform a full range of work at all exertional levels with the following
nonexertional limitations:

> [Plaintiff] is limited to unskilled work consisting of simple, routine,
> repetitive tasks performed in a static environment that would
> experience few, if any, work-related changes; those changes that
> might occur would be gradually introduced and explained or
> demonstrated.  No strict fast paced production or time quotas.
> Frequent, superficial interaction with coworkers and supervisors
> (superficial is defined as no negotiation, arbitration, conflict
> resolution, sales, direction/management of others, or group tasks), and
> incidental to no contact or interaction with the public.

Tr. 22.

At step four, the ALJ found that Plaintiff was unable to perform any of her
past relevant work.  Tr. 26.  At step five, the ALJ found that, considering
Plaintiff's age, education, work experience, RFC, and testimony from the

ORDER - 7

vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as production assembler, industrial cleaner, and hand packager. Tr. 26-27. The vocational expert further testified that an individual with Plaintiff's vocational profile would be able to perform jobs that existed in significant numbers in the national economy under two more restrictive hypotheticals limiting Plaintiff to light and sedentary work with the same nonexertional limitations outlined in the above RFC. Tr. 27. Under the light hypothetical, the vocational expert testified that such an individual would be able to perform the jobs of parts cleaner and electrical accessories assembler. Tr. 27. Under the sedentary hypothetical, the vocational expert testified that such an individual would be able to perform the jobs of final assembler, table worker, and semi-conductor bonder. Tr. 27. Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of July 31, 2015, though the date of the decision. Tr. 27.

On May 23, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income

benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2. Whether the ALJ properly evaluated the medical opinion evidence. ECF No. 14 at 11.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her symptom claims. ECF No. 14 at 11-13. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. Social Security Ruling (SSR) 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th 1996); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 23.

### 1. Not Supported by Objective Medical Evidence

The ALJ found that Plaintiff's symptom complaints were not supported by the objective medical evidence. Tr. 23. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by the objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, the ALJ discussed Plaintiff's alleged symptoms due to anxiety, depression, and bipolar disorder that she claims cause her to be unable to work.

Tr. 23 (citing Tr. 233). The ALJ cited Plaintiff's reports that her impairments limit her ability to talk, hear, remember, complete tasks, concentrate, understand, follow instructions, and get along with others. Tr. 23 (citing Tr. 247). The ALJ also cited Plaintiff's allegations that she is unable to think more than one-step at a time on a daily basis, her organizational skills are completely gone, she gets overwhelmed trying to do basic things, and she frequently has to stop, regroup, and try again. Tr. 23 (citing Tr. 242). The ALJ highlighted Plaintiff's allegations that trying to decide even basic things like what to make for dinner can send her into a panic attack, she is unable to complete tasks without repeated reminders or help, and she is easily distracted. Tr. 23 (citing Tr. 242, 247). The ALJ noted that in her disability appeals report, Plaintiff reported that her psychological impairments have progressively worsened and continue to affect all aspects of daily living. Tr. 23 (citing Tr. 261). The ALJ observed that Plaintiff testified at the hearing that the primary symptom preventing her from working is the unpredictability of her mental state and ability to function. Tr. 23, 63. The ALJ cited Plaintiff's testimony that since September or October 2015 she has crying spells and difficulty sleeping, and she experiences panic attacks three to four times per week. Tr. 23, 65-66. The ALJ cited Plaintiff's testimony that she is unable to make outgoing phone calls due to anxiety and other issues, she frequently needs help from her mother to complete household chores and care for her children, she does

not leave her house unless absolutely necessary, she has problems maintaining personal hygiene and only showers every three to four days. Tr. 23, 47, 64-65, 71-72, 78. The ALJ also noted that Plaintiff alleged physical limitations due to tendonitis in her right ankle, which makes it hard for her to stand or walk for any length of time and limits the types of shoes she can wear.[2] Tr. 23, 63-64.

However, the ALJ found that although Plaintiff had a history of anxiety disorder, depression, and adjustment disorder, examinations showed mostly normal findings that did not support her allegations of total disability. Tr. 23-24; *see, e.g.,* Tr. 308-10 (January 12, 2016: Plaintiff first sought treatment from her primary care provider approximately six months after the alleged onset date; she reported postpartum anxiety related to the birth of her son one month earlier; she endorsed anxiety with severe episodes of agoraphobia and shakiness; on mental status examination, Plaintiff was alert and oriented, with an anxious mood, full affect, normal speech, and stable judgment and insight; she was assessed with anxiety); Tr. 312, 315 (March 29, 2016: Plaintiff established care at Providence Primary Care South for her anxiety; she reported her anxiety had worsened since the birth

---

[2] Plaintiff asserts she is not alleging that she is unable to work due to her physical problems, but instead is alleging that she is unable to work due to her mental symptoms and limitations. ECF No. 14 at 11.

of her son; upon examination, Plaintiff had a normal mood, affect, behavior, judgment, and thought content, and a very well organized thought process, although she became very emotional talking about the negative side effects of medications); Tr. 365 (April 4, 2016: Plaintiff had an anxious mood and a fearful and anxious affect, but she was cooperative with good eye contact and normal psychomotor activity, had normal speech, she was goal directed with organized and logical thought content, her fund of knowledge was average, her insight and judgment, attention, and recent and remote memory were intact; her provider noted her anxiety might be related to hormonal fluctuations after having her baby); Tr. 357, 361 (May 2, 2016 and July 8, 2016: Plaintiff had an anxious mood and a fearful and anxious affect, but she was cooperative with good eye contact and normal psychomotor activity, had normal speech, she was goal directed with organized and logical thought content, her fund of knowledge was average, her insight and judgment, attention, and recent and remote memory were intact); Tr. 353 (August 8, 2016: Plaintiff had an anxious mood and a fearful and anxious affect, but she was cooperative with good eye contact and normal psychomotor activity, had normal speech, she was goal directed with organized and logical thought content, her fund of knowledge was average, her insight and judgment, attention, and recent and remote memory were intact); Tr. 325 (October 19, 2016: Plaintiff reported sleep disturbance, anxiety, depression, and feeling out of control;

upon examination she presented as oriented with a normal mood and affect,

although she appeared anxious and cried easily during the visit); Tr. 333

(November 28, 2016: Plaintiff had an appropriate mood and affect); Tr. 349

(January 16, 2017: Plaintiff had an anxious mood and a fearful and anxious affect,

but she was cooperative with good eye contact and normal psychomotor activity,

had normal speech, congruent mood, she was goal directed with organized, logical,

and linear thought content, her fund of knowledge was average, her insight and

judgment, attention, and recent and remote memory were intact); Tr. 342-43

(February 11, 2017: Plaintiff had good eye contact, was congenial, engaging, and

cooperative, she demonstrated coherent, logical, and linear thought process, normal

speech, normal comprehension, she denied auditory and visual hallucinations and

denied having any intent or plan to harm herself or others, she reported that her

mood was "good today," her affect was normal-appropriate during the majority of

the session, although she became tearful during the mental status examination, she

exhibited no problems with her memory, fund of knowledge, demonstrated good

persistence in attempting tasks and seemed to recognize failures made, and had fair

insight into her overall mental health); Tr. 345 (March 10, 2017: Plaintiff had an

anxious mood, but she was cooperative with good eye contact, had normal speech,

congruent mood, she was goal directed, no abnormal thought content, her insight

and judgment were intact, and her recent and remote memory were intact); Tr. 374

(June 14, 2017: Plaintiff reported the medications were "significantly" helping her anxiety; Plaintiff was assessed with generalized anxiety disorder "doing very well on current regimen"; upon examination Plaintiff had a normal mood and affect); Tr. 377, 380 (June 21, 2017 and July 11, 2017: Plaintiff had a normal mood and affect, her behavior, judgment, and thought content were normal).

Further, the ALJ specifically noted that while Plaintiff alleged she was unable to concentrate or focus, and could not complete even basic tasks without repeated reminders or help, the psychological examiner reported Plaintiff had no problems completing the psychiatric evaluation questionnaire, was able to complete a three-step command, and demonstrated good persistence in completing tasks. Tr. 338-39, 342-43.

Plaintiff disagrees with the ALJ's findings, and argues that the ALJ improperly discounted her symptom allegations because "she had some normal findings during her counseling sessions and during her examination by Dr. Liddell." ECF No. 14 at 12. Plaintiff fails to provide any record citations to demonstrate that the ALJ cherry-picked the record evidence. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's decision in the context of "the entire record as

a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Here, the ALJ reasonably concluded, based on this record, that the objective medical evidence did not support the level of impairment alleged by Plaintiff. Tr. 23-24. The ALJ's finding is supported by substantial evidence and was a clear and convincing reason, in conjunction with Plaintiff's failure to report symptoms to treatment providers, inconsistency with daily activities and childcare activities, improvement with medication, reasons for stopping work unrelated to her impairments, and the ability to work with her impairments, *see infra*, to discount Plaintiff's symptom complaints.

### 2. *Failure to Report Symptoms to Treatment Providers*

The ALJ found that Plaintiff's symptom testimony was inconsistent with Plaintiff's failure to report similar symptoms to her treatment providers. Tr. 24. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Thomas*, 278 F.3d at 958-59. Additionally, "[t]he failure to report symptoms to treatment providers is a legitimate consideration in determining the credibility of those

complaints." *Lesher v. Comm'r of Soc. Sec.*, No. 2:15-cv-00237-SMJ, 2018 WL 314819, at *6 (E.D. Wash. Jan. 5, 2018) (citing *Greger v. Barnhart*, 464 F.3d 972, 972 (9th Cir. 2006)).  Here, the ALJ noted that despite Plaintiff's allegations made during her administrative hearing that she has experienced almost daily panic attacks since September or October 2015, and that after a panic attack the rest of the day is shot, Plaintiff did not report this symptom to her providers.  Tr. 24, 65-66, 76.  The ALJ reasonably concluded, based on this record, that Plaintiff's symptom allegations in connection with her claim of daily disabling panic attacks were inconsistent with reporting to her treatment providers.  This was a clear and convincing reason to discount her symptom complaints.

### 3. Inconsistent with Daily Activities

The ALJ found that Plaintiff's activities were inconsistent with the level of impairment Plaintiff alleged.  Tr. 24.  An ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or nonexertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday

activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ indicated that Plaintiff reported she was unable to work due to mental health impairments that caused extreme limitations, including difficulty sleeping, going days without showering, an inability to make phone calls, and staying at home unless absolutely necessary. Tr. 24, 64-66, 71-72; *see, e.g.,* Tr. 66 (Plaintiff testified, "I lay there and do not fall asleep no matter what I do. I take [B]enadryl or [X]anax and sometimes it helps, but most of the time, I just get sleepy and I just lay there. I can't shut my brain off at all."); Tr. 243 (Plaintiff alleged that no matter how exhausted she was, she had an "extremely hard time falling or staying asleep" because she was unable to shut her mind off); Tr. 72 (Plaintiff testified that she did not keep up on her showering and hygiene, explaining that she "probably" takes a shower every third or fourth day."); Tr. 64 (Plaintiff testified, "I don't make outgoing phone calls. I just can't do it. I try, but when I pick up the phone, my voice gets all tight and I don't make any sense"); Tr. 71 (Plaintiff testified that she does not leave her house unless she absolutely has to, stating "I don't leave very often. If I need something, I call my mom and ask her to do it."); Tr. 246 (Plaintiff alleged, "I don't go anywhere"); Tr. 247 (Plaintiff reported "I never go anywhere anymore."). The ALJ also highlighted Plaintiff's

allegations that trying to decide even basic things like what to make for dinner can send her into a panic attack, she is unable to complete tasks without repeated reminders or help, and she is easily distracted.  Tr. 23 (citing Tr. 242, 247).  However, the ALJ noted that Plaintiff engaged in activities that were incompatible with the extreme limitations alleged.  Tr. 24.  For example, Plaintiff reported that she sleeps five to seven hours per night, cares for her own personal hygiene, sweeps, mops and, vacuums every other day, cleans dishes multiple times per day, cleans, folds, and puts away laundry once a week.  Tr. 24 (citing Tr. 341).  Further, Plaintiff told the psychological examiner that she drives "whenever it is needed," prepares meals twice a day, and shops for groceries and clothing weekly.  Tr. 24 (citing Tr. 341).  The ALJ also noted that Plaintiff told the psychological examiner she was able to use the telephone as needed, which was inconsistent with her claims at the hearing.  Tr. 24 (citing Tr. 341).  The ALJ reasonably concluded that these activities were inconsistent with the debilitating level of impairment Plaintiff alleged.  Tr. 24.

Plaintiff challenges the ALJ's finding by asserting that she could only occasionally perform these activities.  ECF No. 14 at 12-13.  An ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities that "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.  Here, the ALJ identified Plaintiff's specific alleged impairments

and noted specific activities that indicated Plaintiff was less limited than she alleged. Tr. 24. This was a clear and convincing reason to give less weight to Plaintiff's subjective symptom testimony.

### 4. Inconsistent with Childcare Activities

The ALJ discounted Plaintiff's symptom claims as inconsistent with the ability to care for her children. Tr. 24. The ability to care for others without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins*, 261 F.3d at 857. For care activities to serve as a basis for the ALJ to discredit a claimant's symptom claims, the record must identify the nature, scope, and duration of the care involved, showing that the care is hands on rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017). Here, the ALJ noted that Plaintiff alleged she was unable to concentrate or focus, and could not complete even basis tasks without repeated reminders or help. Tr. 24 (citing Tr. 242, 247). The ALJ also observed that Plaintiff reported she was raising two small children with minimal help. Tr. 24, 56, 67, 78. The record provides additional insight into Plaintiff's childcare activities. *See* Tr. 56, 67-70 (Plaintiff testified that her two children, ages two and five, were with her all day); Tr. 71 (When discussing why she does not usually leave her house, Plaintiff testified, "If I leave, then I have to take my kids with me."); Tr. 243 (Plaintiff noted on her function report that she takes care of her two children and does

"everything" for them); Tr. 243 (Plaintiff reported that the children's father helped with the children three mornings a week). During the hearing, when asked to describe her "average typical day," Plaintiff described caring for her two small children for the entire day with no help other than the children's father putting them down for a nap in the afternoon. Tr. 68-70. Plaintiff testified that her mother helps with her children, but further stated "[e]very once in a while, if I'm having a particularly bad stretch and [the children's father] cannot miss anymore work which is perfectly understandable, and my mom who has kidney failure can't help today also understandable, I will call the crisis nursery and see if they can take the kids for the day too. I've accessed them occasionally for that." Tr. 78. The ALJ noted that raising two small children requires considerable focus, persistence, and mental stability. Tr. 24. On this record, the ALJ properly found that Plaintiff's childcare activities did not support her disabling subjective symptom complaints.

### 5. Improvement with Medication

The ALJ discounted Plaintiff's symptom claims because her anxiety symptoms improved with medication. Tr. 23-24. The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2017); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (recognizing that conditions effectively controlled with medication are not disabling for purposes of

determining eligibility for benefits) (internal citations omitted); *see also*

*Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (A favorable response

to treatment can undermine a claimant's complaints of debilitating pain or other

severe limitations.).  Here, the ALJ cited treatment records demonstrating that

Plaintiff's anxiety symptoms improved with medication.  Tr. 23-24; *see, e.g.,* Tr.

372 (Plaintiff reported significant improvement in her anxiety symptoms with

medication; Plaintiff felt they were "the right dose for her," and denied any side

effects; provider noted she was doing very well on her current medication

regimen).  The ALJ also noted that there are no records from 2018, suggesting that

Plaintiff's mental health issues have not been severe enough to motivate her to

seek treatment.  Tr. 24.  Based on this record, the ALJ reasonably concluded that

Plaintiff's mental impairments, when treated with medication, were not as limiting

as Plaintiff claimed.  This was a clear and convincing reason to discount Plaintiff's

symptom claims.

### 6.  Stopped Work for Reasons Unrelated to Impairments

The ALJ found that Plaintiff's symptom complaints were less reliable

because she stopped working for reasons other than her impairments.  Tr. 24.  An

ALJ may consider that a claimant stopped working for reasons unrelated to the

allegedly disabling condition in making a credibility determination.  *See Bruton v.*

*Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).  The ALJ noted that despite

Plaintiff's alleged disability onset date of July 31, 2015, testimony confirmed that

Plaintiff stopped working in 2015 after being placed on bed rest due to pregnancy,

and not due to her alleged disabling mental health issues.  Tr. 24; *see, e.g.,* Tr. 74

(Plaintiff testified that her last job ended because "I was put on bed rest.  I couldn't

do the barn job anymore."); Tr. 57 (When asked about earnings listed as self-

employment in 2015, Plaintiff testified that the earnings record was incorrect and

she actually worked in 2016 because she had just given birth at the end of 2015

and "wasn't doing anything.").  The ALJ reasonably concluded that this reason for

stopping work undermines Plaintiff's claim that her anxiety and depression made it

impossible for her to work at all.  Tr. 24.

   *7.  Ability to Work with Impairments*

   The ALJ found that Plaintiff's symptom allegations were inconsistent with

her ability to work part-time after her alleged disability onset date.  Tr. 17, 24.

Working with an impairment supports a conclusion that the impairment is not

disabling.  *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *see also*

*Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (seeking

work despite impairment supports inference that impairment is not disabling).  The

ALJ indicated that Plaintiff reported she was unable to work due to mental health

impairments that caused extreme limitations, including difficulty sleeping, going

days without showering, an inability to make phone calls, and not leaving her

house unless absolutely necessary.  Tr. 24, 64-66, 71-72, 246-47.  The ALJ highlighted Plaintiff's allegations that trying to decide even basic things like what to make for dinner can send her into a panic attack, she is unable to complete tasks without repeated reminders or help, and she is easily distracted.  Tr. 23 (citing Tr. 242, 247).  The ALJ cited Plaintiff's testimony that since September or October 2015 she has panic attacks three to four times per week.  Tr. 23, 65-66.  The ALJ cited Plaintiff's reports that her impairments limit her ability to talk, hear, remember, complete tasks, concentrate, understand, follow instructions, and get along with others.  Tr. 23 (citing Tr. 247).  The ALJ also cited Plaintiff's allegations that she is unable to think more than one-step at a time on a daily basis, her organizational skills are completely gone, she gets overwhelmed trying to do basic things, she frequently has to stop, regroup and try again.  Tr. 23 (citing Tr. 242).  Further, the ALJ noted that in her disability appeals report, Plaintiff reported that her psychological impairments have progressively worsened and continue to affect all aspects of daily living.  Tr. 23 (citing Tr. 261).  However, the ALJ observed that Plaintiff was able to work at least part-time cleaning houses after her disability onset date of July 31, 2015, which showed she was more functional than alleged.  Tr. 24.  At the hearing, the ALJ questioned Plaintiff about her past work cleaning someone's house.  Tr. 57.  Plaintiff testified that at the "tail end of 2016" she began cleaning someone's house and she was paid in cash.  Tr. 57.  Further,

Plaintiff testified that although this work began at the end of 2016, she still performs this work "every once in a while." Tr. 57. Based on Plaintiff's testimony, the ALJ reasonably concluded that although this work was not substantial gainful activity, Plaintiff's ability to work at least part-time cleaning houses after her disability onset date indicated that Plaintiff's impairments were not as severe as she alleged. Tr. 17, 24.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Morgan Liddell, M.D., and Amanda Guthmueller, LMHC. ECF No. 14 at 13-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–31. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews*, 53 F.3d at 1041.

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (alteration in original); *see* 20 C.F.R. §§ 404.1513, 416.913 (2013).[3] However, an ALJ is required to

_____

[3] For cases filed prior to March 27, 2017, the definition of an acceptable medical source, as well as the requirement that an ALJ consider evidence from non-acceptable medical sources, are located at 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).

ORDER - 27

consider evidence from non-acceptable medical sources. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013). An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion. *Ghanim*, 763 F.3d at 1161.

### 1. Dr. Liddell

On February 11, 2017, Plaintiff underwent a consultative psychological examination performed by Morgan Liddell, M.D. Tr. 338-44. Plaintiff reported that she was unable to work due to an inability to stay focused and organized, further describing difficulty with setting goals, time management, and caring for herself. Tr. 339. She reported poor memory, ADHD, anxiety, and a history of unstable relationships. Tr. 339. She described her mood as "typically cheerful and laid back" but with periods of irritability and poor frustration tolerance. Tr. 339. Plaintiff endorsed sleep disturbance, poor concentration, and fatigue. Tr. 339. Dr. Liddell noted that Plaintiff arrived early for her appointment, she was observed to pull up to the clinic in an SUV with her window down, singing, she easily engaged Dr. Liddell's secretary and completed the psychiatric evaluation questionnaire without any odd behaviors. Tr. 338. On mental status examination, Dr. Liddell

noted that Plaintiff presented with appropriate clothing, fair grooming and hygiene, she had good eye contact, was congenial, engaging, and cooperative, had good adherence to social conventions, and did not demonstrate any abnormal movements. Tr. 342. She had normal thought process, normal speech, normal comprehension, and denied hallucinations and delusions. Tr. 342. Plaintiff reported that her mood was "good today." Tr. 342. Dr. Liddell found that Plaintiff's affect was normal-appropriate during the majority of the session, and she became tearful during the mental status examination. Tr. 342. Mental status examination findings showed that Plaintiff was alert and oriented, and she demonstrated a normal memory, fund of knowledge, and attention. Tr. 342. She recalled five out of five items after a delay, was able to follow a three-step command, spelled the word "world" backwards, and demonstrated good persistence in attempting tasks. Tr. 342-43.

Dr. Liddell opined that Plaintiff's mental impairments would not produce any obvious limitations in her ability to perform simple and repetitive tasks, perform detailed and complex tasks, interact with coworkers and the public, accept instructions from supervisors, perform work activities on a consistent basis, or maintain regular attendance in the workplace. Tr. 344. Dr. Liddell also opined that Plaintiff's psychiatric symptoms would cause limitations in her ability to complete a normal workday or workweek without interruptions and manage usual

stress encountered in the workplace without some accommodations. Tr. 344.

However, Dr. Liddell also stated that Plaintiff's psychiatric complaints were

treatable with a fair likelihood of substantial recovery and were likely to improve

within the next 12 months with standard care treatment. Tr. 343.

The ALJ gave Dr. Liddell's opinion little weight. Tr. 25. Because Dr.

Liddell's opinion was contradicted by the nonexamining opinions of Patricia Kraft,

Ph.D., and John Robinson, Ph.D., Tr. 90-93, 100-03, 111-13, 121-23, the ALJ was

required to provide specific and legitimate reasons for discounting Dr. Liddell's

opinion. *Bayliss*, 427 F.3d at 1216.

### a. Conclusory Opinion

The ALJ rejected Dr. Liddell's opinion because she did not provide rationale

in support of the limitations she opined. Tr. 25. The Social Security regulations

"give more weight to opinions that are explained than to those that are not."

*Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any

physician, including a treating physician, if that opinion is brief, conclusory and

inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228.

Furthermore, an ALJ may reject an opinion that does "not show how [a claimant's]

symptoms translate into specific functional deficits which preclude work activity."

*See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). In

her opening brief, Plaintiff did not challenge this reason articulated by the ALJ,

thus it is waived.  *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (recognizing the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

Despite Plaintiff's waiver, the Court has reviewed the ALJ's finding.  The ALJ determined that Dr. Liddell's opinion relied upon undefined vocational terms, finding that Dr. Liddell failed to elaborate on the extent of her opined limitations in completing a normal workday/workweek and managing usual stress.  Tr. 25.  The ALJ also determined that Dr. Liddell provided almost no explanation as to why Plaintiff would have such limitations.  Tr. 25.  Dr. Liddell also failed to explain the type of "usual stress" that would cause Plaintiff to be disabled.  *Morgan*, 169 F.3d at 601.  The ALJ reasonably discredited these findings as not sufficiently explained.  Tr. 25.  This was a specific and legitimate reason to discredit Dr. Liddell's opinion.

### b.  Internally Inconsistent

The ALJ found that Dr. Liddell's opined limitations in completing a normal workday/workweek and managing usual stress were internally inconsistent with Dr. Liddell's own examination findings.  Tr. 25.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.  *Lingenfelter v. Astrue*, 504 F.3d

1028, 1035 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

Moreover, a physician's opinion may be rejected if it is unsupported by the

physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir.

2003). The ALJ noted that Dr. Liddell's own mental status examination findings

were largely intact. Tr. 25. The ALJ found that Plaintiff presented with

appropriate clothing and fair grooming and hygiene. Tr. 19, 341. The ALJ noted

that Dr. Liddell reported Plaintiff had good eye contact, was congenial, engaging

and cooperative, had good adherence to social conventions, as shown by shaking

Dr. Liddell's hand when offered and offering appropriate greetings, and did not

demonstrate any abnormal movements. Tr. 19, 338, 342. The ALJ noted that Dr.

Liddell found Plaintiff had normal thought process, normal speech, normal

comprehension, and no hallucinations or delusions. Tr. 19, 342. Further, the ALJ

cited Dr. Liddell's notation that Plaintiff reported her mood was "good today," and

she noted Plaintiff's affect was normal-appropriate during the majority of the

session, although she became tearful during the mental status examination. Tr. 19,

342. The ALJ observed that Dr. Liddell noted Plaintiff was alert and oriented, and

demonstrated a normal memory, fund of knowledge, attention and concentration.

Tr. 19, 342. The ALJ noted that Dr. Liddell found Plaintiff recalled five out of five

items after a delay, was able to follow a three-step command, spelled the word

"world" backwards, and demonstrated good persistence in attempting tasks. Tr.

19, 342-43.  Notably, Dr. Liddell opined that Plaintiff "would not have any obvious limitations in her ability to . . . perform work activities on a consistent basis, or maintain regular attendance in the workplace."  Tr. 344.

Plaintiff argues that "Dr. Liddell would have based his opinion on [Plaintiff's] medical history of mental problems and upon his observations during the evaluation."  ECF No. 14 at 15.  As discussed *supra*, Plaintiff's mental impairments and Dr. Liddell's observations during the evaluation do not support Plaintiff's disabling symptom claims.  To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence.  *Morgan*, 169 F.3d at 599-600.  Where, as here, evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679; *Hill*, 698 F.3d at 1158 (recognizing the court only disturbs the ALJ's findings if they are not supported by substantial evidence).  The ALJ provided a specific and legitimate reason to discount Dr. Liddell's opined limitations in completing a normal workday/workweek and managing usual stress.

### c.  Inconsistent with the Overall Record

The ALJ reasoned that Dr. Liddell's opinion was not consistent with the overall record.  Tr. 25.  Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504

F.3d at 1035; *Orn*, 495 F.3d at 631. The ALJ noted that Dr. Liddell's opinion was

inconsistent with the largely benign mental status findings documented in the

record. Tr. 25; *see, e.g.,* Tr. 353 (August 8, 2016: Plaintiff had an anxious mood

and a fearful and anxious affect, but she was cooperative with good eye contact

and normal psychomotor activity, had normal speech, she was goal directed with

organized and logical thought content, her fund of knowledge was average, her

insight and judgment, attention, and recent and remote memory were intact); Tr.

349 (January 16, 2017: Plaintiff had an anxious mood and a fearful and anxious

affect, but she was cooperative with good eye contact and normal psychomotor

activity, had normal speech, congruent mood, she was goal directed with

organized, logical, and linear thought content, her fund of knowledge was average,

her insight and judgment, attention, and recent and remote memory were intact);

Tr. 342-43 (February 11, 2017: Plaintiff had good eye contact, was congenial,

engaging, and cooperative, she demonstrated coherent, logical, and linear thought

process, normal speech, normal comprehension, she denied auditory and visual

hallucinations and denied having any intent or plan to harm herself or others, she

reported that her mood was "good today," her affect was normal-appropriate

during the majority of the session, although she became tearful during the mental

status examination, she exhibited no problems with her memory or fund of

knowledge, demonstrated good persistence in attempting tasks and seemed to

recognize failures made, and had fair insight into her overall mental health); Tr. 345 (March 10, 2017: Plaintiff had an anxious mood, but she was cooperative with good eye contact, had normal speech, congruent mood, she was goal directed with no abnormal thought content, her insight and judgment were intact, and her recent and remote memory were intact); Tr. 374 (June 14, 2017: Plaintiff reported her medications were "significantly" helping her anxiety; Plaintiff was assessed with generalized anxiety disorder "doing very well on current regimen"; upon examination Plaintiff had a normal mood and affect); Tr. 377, 380 (June 21, 2017 and July 11, 2017: Plaintiff had a normal mood and affect, and her behavior, judgment, and thought content were normal). Moreover, the ALJ determined that Dr. Liddell's opinion was inconsistent with Plaintiff's own reports of significant improvement in her anxiety with medication. Tr. 25; *see, e.g.,* Tr. 24, *see, e.g.,* Tr. 372 (Plaintiff reported significant improvement in her anxiety symptoms with medication; Plaintiff felt they were "the right dose for her," and denied any side effects; provider noted she was doing very well on her current medication regimen).

Plaintiff argues that the ALJ erred in weighing Dr. Liddell's opinion because the ALJ "assigned great weight to the opinions of doctors who allegedly reviewed [Plaintiff's] medical records at the Disability Determination Services." ECF No. 14 at 14 (citing Tr. 25, 109-13, 119-23). Plaintiff's argument is misplaced, as the

ALJ gave little weight to the State agency psychologists' opinions that Plaintiff

had no severe mental impairments, and the ALJ instead formulated an RFC

limiting Plaintiff to unskilled work consisting of simple, routine, repetitive tasks in

a static environment with few, if any, work-related changes, no strict fast paced

production or time quotas, frequent, superficial interaction with coworkers and

supervisors, and incidental to no contact or interaction with the public.  Tr. 22, 25

(citing Tr. 90-93, 100-03, 111-13, 121-23).  The ALJ reasonably determined that

Dr. Liddell's opinion was not consistent with the largely benign mental status

findings documented in the record or with Plaintiff's own reports of significant

improvement in her anxiety with medication.  Tr. 25.  This was a specific and

legitimate reason, supported by substantial evidence, to discount Dr. Liddell's

opinion.

d.  Durational Requirement

The ALJ discounted Dr. Liddell's assessment because it was unclear

whether her opinion established a durational level of impairment.  Tr. 25.

Temporary limitations are not enough to meet the durational requirement for a

finding of disability.  20 C.F.R. §§ 404.1505(a), 416.905(a) (requiring a claimant's

impairment to be expected to last for a continuous period of not less than twelve

months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming

the ALJ's finding that treating physicians' short-term excuse from work was not

indicative of "claimant's long-term functioning"). In the opening brief, Plaintiff did not challenge this reason articulated by the ALJ, thus it is waived. *Kim*, 154 F.3d at 1000.

Despite Plaintiff's waiver, the Court has reviewed the ALJ's finding. The ALJ noted that Dr. Liddell specifically stated that Plaintiff's condition was likely to improve within the next 12 months with appropriate treatment. Tr. 25. To be disabled, an impairment must be expected to last for a continuous period of at least 12 months. *See* 20 C.F.R. §§ 404.1509, 416.909; *see also* 20 C.F.R. §§ 404.1505, 416.905. Here, Dr. Liddell opined that Plaintiff's condition would likely improve with appropriate treatment within the next 12 months. Tr. 343-44. Without further clarification, Dr. Liddell's statement could mean that Plaintiff would be impaired for the entire 12-month period. Therefore, it appears that Dr. Liddell's opinion may have satisfied the disability durational requirement and this was not a specific and legitimate reason to discredit Dr. Liddell's opinion. However, such error is harmless because the ALJ provided other specific and legitimate reasons, supported by substantial evidence, *see infra*, to discredit Dr. Liddell's opinion. *Molina,* 674 F.3d at 1115.

### 2. Ms. Guthmueller

On March 10, 2018, Plaintiff's counselor, Amanda Guthmueller, LMHC, completed a mental medical source statement. Tr. 392-97. Ms. Guthmueller noted

that she had provided mental health counseling to Plaintiff from October 2015 through October 2016 and Plaintiff exhibited "slight if any improvement." Tr. 392. Ms. Guthmueller noted that she did not conduct any mental status examinations or have any clinical findings that demonstrated the severity of Plaintiff's mental impairments and symptoms. Tr. 392. Ms. Guthmueller checked boxes on the mental medical source statement indicating that Plaintiff would have serious limitations in her ability to complete a normal workday or workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and travel in unfamiliar places. Tr. 394-95. Ms. Guthmueller checked boxes assessing that Plaintiff would be off-task five percent of the time, and would miss more than four days of work each month. Tr. 396. The ALJ gave Ms. Guthmueller's opinion little weight. Tr. 25. Because Ms. Guthmueller was an "other source," the ALJ was required to provide germane reasons to discount her opinion.[4] *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

---

[4] As a therapist, Ms. Guthmueller is considered an "other source" under 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (2013).

ORDER - 38

### a. "Other Source" Opinion

In discrediting her opinion, the ALJ noted that Ms. Guthmueller was not an acceptable medical source. Tr. 25. An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony cannot establish the existence of medically determinable impairments, but lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id.*; 20 C.F.R. §§ 404.1513, 416.913; *see also Dodrill*, 12 F.3d at 918-19 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919). The fact that Ms. Guthmueller was an "other source" was not a germane reason to reject her opinion. Plaintiff asserts that because Ms. Guthmueller's opinion was allegedly consistent with Dr. Liddell's assessment, the ALJ was required to provide clear and convincing reasons to reject Ms. Guthmueller's opinion. ECF No. 14 at 16. Plaintiff offers no legal authority to support this specific proposition. Although the fact that she was an other source was not a germane reason to discount her opinion, because Ms. Guthmueller was an "other source" under 20 C.F.R. §§ 404.1513(d), 416.913(d), the ALJ need only

have provided germane reasons for rejecting her findings. *See Molina,* 674 F.3d at 1111.

b. Self-Report

The ALJ found that Ms. Guthmueller's limitations were based exclusively on Plaintiff's self-reports. Tr. 25. A physician's opinion may be rejected if it based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604. "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, [this] is no evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d at 1162. As discussed *supra*, the ALJ reasonably discredited Plaintiff's symptom complaints. Moreover, the ALJ noted that Ms. Guthmueller specifically stated that a mental status examination was "not conducted," suggesting that her opinions were based exclusively on Plaintiff's self-reports. Tr. 25 (citing Tr. 392). Plaintiff argues that Ms. Guthmueller, as a counselor at Spokane Resource Group, would have been aware of Plaintiff's symptoms during her counseling sessions, and Plaintiff testified that Ms. Guthmueller was one of her counselors at Spokane Resource Group. ECF No. 14 at 15; Tr. 47, 73. Plaintiff asserts that Ms. Guthmueller would have reviewed the findings and notes of several different counselors at Spokane Resource Group, and therefore, her diagnosis and opinion was not based on Plaintiff's self-report, but

ORDER - 40

instead was based on the counseling records as a whole. ECF No. 14 at 15-16. However, given Ms. Guthmueller's limited evaluation, absence of a mental status examination or any clinical findings, no record review, and minimal explanation, the ALJ reasonably concluded that Ms. Guthmueller relied on Plaintiff's discredited symptom complaints in assessing serious limitations. This was a germane reason for discounting Ms. Guthmueller's opinion.

### c. Internally Inconsistent

The ALJ found that Ms. Guthmueller's opinion that Plaintiff would be absent more than four days a month was internally inconsistent with Ms. Guthmueller's own assessment of Plaintiff's mild limitations in other areas. Tr. 25. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1035; *Orn*, 495 F.3d at 631. Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett*, 340 F.3d at 875. In the opening brief, Plaintiff did not challenge this reason articulated by the ALJ, thus it is waived. *Kim*, 154 F.3d at 1000.

Despite Plaintiff's waiver, the Court has reviewed the ALJ's finding. The ALJ noted that Ms. Guthmueller opined Plaintiff would be absent more than four

days a month, yet indicated only mild limitations in many other areas, which was inconsistent with an individual who was so debilitated that they would not be able to attend work for multiple days a month. Tr. 25; *see, e.g.,* Tr. 394 (Ms. Guthmueller assessed Plaintiff as having an unlimited or very good ability to maintain regular attendance and be punctual within customary, usually strict tolerances, and to sustain an ordinary routine without special supervision). This was a germane reason for the ALJ to discount Ms. Guthmueller's opinion that Plaintiff would miss work more than four days per month. Tr. 25.

### d. Inconsistent with Overall Record

The ALJ reasoned that Ms. Guthmueller's opinion was not supported by the record as a whole. Tr. 25. Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1035; *Orn*, 495 F.3d at 631. The ALJ noted that although Ms. Guthmueller stated that during Plaintiff's treatment from October 2015 to October 2016, Plaintiff had "slight if any improvement," Tr. 392, records during the same time frame showed Plaintiff was "doing a lot better" and had continued improvement in her anxiety and depression. Tr. 25; *see, e.g.,* Tr. 316 (May 18, 2016: Plaintiff reported she felt like she was "doing a lot better"); Tr. 352-53 (August 8, 2016: Plaintiff reported "I am doing better in some ways but I think I might be getting

some depression"); Tr. 356-57 (July 8, 2016: Plaintiff reported that overall she had been feeling "pretty good."). The ALJ also determined that Ms. Guthmueller's opinions were inconsistent with the benign mental status examination findings and demonstrated functional abilities throughout the record, showing that Plaintiff was engaging and cooperative, had normal mood and affect, and presented with good eye contact and normal speech, normal or intact memory, attention, focus, and concentration. Tr. 25, 342, 345, 349, 353, 357, 374, 377, 380. The ALJ reasonably considered that these findings directly contradicted Ms. Guthmueller's assessment that Plaintiff had serious limitations in completing a normal workday or workweek without interruptions from psychologically based symptoms, performing at a consistent pace, and traveling in unfamiliar places, when discounting her opinion. Tr. 25.

Plaintiff argues that Ms. Guthmueller's opinion would have been based on her counseling records as a whole, and her opinion was consistent with the opinion of Dr. Liddell. ECF No. 14 at 16. These assertions do not undermine the ALJ's conclusion. As discussed *supra*, the ALJ reasonably determined that Dr. Liddell's own mental status examination findings were largely intact and inconsistent with the largely benign mental status findings documented in the record, and with Plaintiff's own reports of significant improvement in her anxiety with medication. Tr. 25. This was a germane reason to discount Ms. Guthmueller's opinion.

e. Inadequate Explanation

The ALJ also discounted Ms. Guthmueller's opinion because it was only a check-box form with little explanation for the assessed limitations. Tr. 25. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228. For this reason, individual medical opinions are preferred over check-box reports. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions. *Crane*, 76 F.3d at 253. However, if treatment notes are consistent with the opinion, a conclusory opinion, such as a check-the-box form, may not automatically be rejected. *See Garrison*, 759 F.3d at 1014 n.17; *see also Trevizo*, 871 F.3d at 667 n.4 ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form"). Here, the ALJ noted that Ms. Guthmueller's opinion consisted of a check-box form, with little explanation to support the degree of limitation opined. Tr. 25 (citing Tr. 392-97). The ALJ observed that, while Ms. Guthmueller treated Plaintiff for over a year, she had not treated Plaintiff not since October 2016 and her opinion was rendered almost a year and a half later, in March 2018. Tr. 392, 397. The ALJ noted that although Ms. Guthmueller saw Plaintiff for 37 one-hour sessions from during her year of treatment, there were no treatment records from Ms. Guthmueller in the record and

thus, there were no objective findings from Ms. Guthmueller to corroborate her opinion. Tr. 25. Given the lack of explanation, this was a germane reason to reject Ms. Guthmueller's opinion.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED March 23, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 45